## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as an assignee of individuals who are Covered Persons,* JANE DOE-1, *a law enforcement officer,* JANE DOE-2, *a law enforcement office*, PATRICK COLLIGAN,<br><br>Plaintiffs,<br><br>v.<br><br>LIGHTHOUSE LIST COMPANY, LLC, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>Defendants. | CASE NO. 1:24-cv-11443<br>Hon. Harvey Bartle, III |

## DEFENDANT LIGHTHOUSE LIST COMPANY, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................3

LEGAL STANDARD .............................................................................................5

ARGUMENT .........................................................................................................5

    I.    Plaintiffs Are Not Entitled to Jurisdictional Discovery Under the Effects
        Test. ...............................................................................................................5

        A.    The Effects Test Does Not Apply Because Daniel's Law Is Not an
            Intentional Tort....................................................................................6

        B.    Even if The Effects Test Were Available, Plaintiffs Have Not
            Pleaded Jurisdiction Under It. .............................................................9

        C.    Plaintiffs Have Not Alleged Personal Jurisdiction Under the
            Purposeful Availment Test. ...............................................................15

    II.    Plaintiffs' Challenges to Lighthouse List's Discovery Responses Are
        Meritless.......................................................................................................17

        A.    Requests Concerning Lighthouse List's Sales Into and Revenue
            from New Jersey. ...............................................................................18

        B.    Requests Concerning Lighthouse List's Marketing Activities.......................19

        C.    Requests Concerning Lighthouse List's Contracts. .........................................19

        D.    Requests Concerning Lighthouse List's Data Sources. ...................................21

        E.    Requests Concerning Lighthouse List's Compliance with New
            Jersey Laws Generally. .....................................................................21

        F.    Requests Concerning Lighthouse List's Alleged Receipt of and
            Response to Plaintiffs' and Alleged Covered Persons' Unilaterally
            Sent Daniel's Law Requests...............................................................23

        G.    Plaintiffs' Miscellaneous Additional Requests ...............................25

CONCLUSION.....................................................................................................28

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*3G Licensing, S.A. v. Lenovo Grp. Ltd.*,
    2019 WL 3974539 (D. Del. Aug. 22, 2019) ..........................................................................17

*Aldossari v. Ripp*,
    49 F.4th 236 (3d Cir. 2022) ...................................................................................1, 5, 21

*Atlas Data Priv. Corp. v. We Inform, LLC*,
    758 F. Supp. 3d 322 (D.N.J. 2024) ..........................................................................6, 8, 9

*Booker v. Twp. of Cinnaminson*,
    2012 WL 4791126 (E.D. Pa. Oct. 5, 2012)...............................................................14, 24

*Briskin v. Shopify*,
    135 F.4th 739 (9th Cir. 2025) ...........................................................................................12

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).........................................................................................................18

*Calder v. Jones*,
    465 U.S. 783 (1984).................................................................................................. *passim*

*Castelaz v. Estee Lauder Cos.*,
    2024 WL 136872 (N.D. Ill. Jan. 10, 2024) ...............................................................22, 23

*Commw. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
    836 F.2d 173 (3d Cir. 1988)..............................................................................................10

*Dalal v. Clearview AI Inc.*,
    2025 WL 1726259 (D.N.J. May 1, 2025) ......................................................... *passim*

*DNA Genotek Inc. v. Spectrum DNA*,
    224 F. Supp. 3d 359 (D. Del. 2016)..............................................................................20-21

*Eastman Chem. Co. v. AlphaPet Inc.*,
    2011 WL 6004079 (D. Del. Nov. 4, 2011) .........................................................................5

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
    623 F.3d 147 (3d Cir. 2010)...............................................................................................5

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    592 U.S. 351 (2021)..........................................................................................................22

*Hasson v. FullStory, Inc.*,
    114 F.4th 181 (3d Cir. 2024) ..................................................................................... *passim*

*IMO Indus., Inc. v. Kiekert AG,*
    155 F.3d 254 (3d Cir. 1998)..........................................................................6, 9, 11, 14

*In re Pharmacy Benefit Managers Antitrust Litig.,*
    582 F.3d 432 (3d Cir. 2009)..................................................................................6

*Ingraham v. Ortho-McNeil Pharmaceutical,*
    422 N.J. Super. 12 (App. Div. 2011) ....................................................................7

*Marten v. Godwin,*
    499 F.3d 290 (3d Cir. 2007)................................................................................13

*McDonald v. Kiloo ApS,*
    385 F. Supp. 3d 1022 (N.D. Cal. 2019) ..............................................................16

*Monturi v. Englewood Hosp.,*
    246 N.J. Super. 547 (App. Div. 1991) ..................................................................8

*Newman v. N.C. Ins. Underwriting Ass'n,*
    2020 WL 6689756 (D.N.J. Nov. 13, 2020) ...................................................14, 24

*Pinninti v. NRI Med. Coll. (NRIAS),*
    2010 WL 2483992 (D.N.J. June 4, 2010) ......................................................14, 24

*Romaine v. Kallinger,*
    537 A.2d 284 (N.J. 1988).......................................................................................8

*Scott v. Lackey,*
    587 F. App'x 712 (3d Cir. 2014) (per curiam) ...................................................14

*Shuker v. Smith & Nephew, PLC,*
    885 F.3d 760 (3d Cir. 2018)................................................................................17

*State v. N.I,*
    349 N.J. Super. 299 (App. Div. 2002) ..................................................................9

*Thomas v. Papa John's Int'l, Inc.,*
    2025 WL 1704437 (9th Cir. June 18, 2025) ..................................................12, 13

*Vonbergen v. Liberty Mutual Insurance Company,*
    705 F. Supp. 3d 440 (E.D. Pa. 2023) ..................................................................12

*Walden v. Fiore,*
    571 U.S. 277 (2014)....................................................................................14, 15, 23, 24

**Statutes**

N.J. Stat. Ann. § 56:8-166.1(d) ................................................................7, 11

**Other Authorities**

Fed. R. Civ. P. 12(b)(2) ................................................................3

Fed. R. Civ. P. 26 ................................................................17

L. Civ. R. 37.1 ................................................................4

Restatement (Second) of Torts § 6 ................................................................8

Restatement (Second) of Torts § 8A (1965) ................................................................7, 8, 9

Restatement (Second) of Torts § 161 ................................................................8

Restatement (Second) of Torts § 825 ................................................................8

## <u>INTRODUCTION</u>

Plaintiffs' approach to personal jurisdiction is backwards.  Before demanding jurisdictional discovery, a plaintiff must first plead facts that, if true, would establish a prima facie case of jurisdiction.  What a plaintiff may not do is "show up in court with 'bare allegations' and force defendants to start handing over evidence."  *Aldossari v. Ripp*, 49 F.4th 236, 259 (3d Cir. 2022).  Yet that is exactly what Plaintiffs have done here.  Plaintiffs' Complaint against Lighthouse List includes a single, boilerplate jurisdictional allegation, that Lighthouse List "resides and/or conducts business in New Jersey" and that "the unlawful actions" challenged here "occurred in New Jersey."  *Atlas Data Priv. Corp. v. Lighthouse List Co.*, No, 24-cv-11443, Notice of Removal, Ex. C (Second Am. Complaint) ("Complaint") (Doc. 1-4).  Lighthouse List moved to dismiss for lack of personal jurisdiction and explained why Plaintiffs' theory fails.

Plaintiffs then decided they needed to pivot.  Ignoring the Court's directive to propound limited and reasonable jurisdictional discovery, Plaintiffs issued sweeping discovery requests based on a jurisdictional theory *nowhere* alleged in the Complaint and that Plaintiffs have articulated for the first time in their motion to compel.  *See* Doc. 42 at 3-8 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).  Revealing the impropriety in Plaintiffs' approach, a New Jersey state court recently granted a motion to dismiss for lack of personal jurisdiction in a materially identical case and denied *any* jurisdictional discovery because the plaintiffs had failed to supply "factual allegations" warranting it.  *See* Decl. of Sudhir Rao ("Rao Decl."), Ex. A (Order Granting Mot. to Dismiss, *Atlas Data Priv. Corp. v. Choreograph LLC*, No. BER-L-000920-24, Trans ID LCV20251712268 (June 6, 2025)).  The same result is warranted here, especially because Lighthouse List has already provided ample information in response to Plaintiffs' discovery requests, information that bars the exercise of jurisdiction over Lighthouse List.

For that reason, and at least three others, this Court should deny Plaintiffs' motion to compel. _First_, _Calder_'s "effects" test, which most of Plaintiffs' discovery requests relate to, applies only to intentional torts. But this Court has already held that Daniel's Law imposes only a negligence standard, which renders _Calder_ inapposite. Regardless, Plaintiffs' position that Daniel's Law is an "intentional tort" merely because some element of a Daniel's Law claim is volitional proves too much and would upend decades of settled tort doctrine.

_Second_, even if the effects test could theoretically apply to Daniel's Law claims, Plaintiffs have failed to allege any facts to satisfy it here. Plaintiffs do not (and cannot) allege that Lighthouse List intentionally violated Daniel's Law or failed to implement any alleged covered persons' takedown requests specifically _because_ those persons live in New Jersey.

_Third_, for all the reasons Lighthouse List explained in its motion to dismiss, Plaintiffs' purposeful availment theory of jurisdiction is a nonstarter. Plaintiffs' half-hearted effort to resuscitate that theory here fails because it is unmoored from the Complaint's allegations. Meanwhile, Lighthouse List's evidence conclusively establishes the _absence_ of contacts between Lighthouse List and the New Jersey forum.

Plaintiffs' challenges to Lighthouse List's specific discovery responses are illusory because those challenges are based on unpleaded and meritless jurisdictional theories. Regardless, those challenges fail for other reasons too: many of Plaintiffs' requests have nothing to do with jurisdiction, or even Daniel's Law. And Lighthouse List has already provided sufficient discovery relevant and proportional to the jurisdictional inquiry.

This Court should deny Plaintiffs' motion to compel jurisdictional discovery.

## **BACKGROUND**

As Lighthouse List explained in its motion to dismiss for lack of personal jurisdiction, it is a limited liability company formed in Florida under Florida law and, at all relevant times, has had its principal place of business in Florida.  *See* Doc. 17-1 at 3 (citations omitted).  Lighthouse List is not registered to do business in New Jersey; does not own, lease, or in any other way maintain or possess any real property in New Jersey, including office space; does not own or operate any servers in New Jersey; does not maintain any assets or bank accounts in New Jersey; and does not have any employees in New Jersey.  *See id.* (citations omitted).  In addition, at all relevant times, Lighthouse List's services were available equally in New Jersey as they were in all other States; Lighthouse List did not target its website or services specifically to New Jersey or tailor or target any advertising or marketing campaigns specifically to New Jersey; Lighthouse List did not maintain or manage any email inbox in New Jersey, including the inbox to which the Daniel's Law requests at issue here were allegedly sent, *i.e.*, privacy@lighthouselist.com; and Lighthouse List maintained data about individuals who reside across the United States, not only about New Jersey residents.  *See id.* at 4 (citations omitted).  *See also generally* Doc. 17 (Lighthouse List joining in a consolidated brief supporting its motion to dismiss for lack of personal jurisdiction, filed at *Atlas Data Privacy Corporation, et al. v. GoHunt LLC, et al.*, No. 1:24-cv-04380, Doc. 42-1 ("Defs.' Opening MTD Br.") (D.N.J. Mar. 18, 2025)).

On April 2, 2025, this Court authorized discovery "relevant to the motions of defendants to dismiss pursuant to Rule 12(b)(2)."  Doc. 23 ¶ 6.  On April 14, 2025, Plaintiffs served on Lighthouse List sixteen interrogatories and twenty-three requests for production of documents (not counting their numerous sub-parts).  *See* Doc. 42-1 ¶ 3, 42-2.  Lighthouse List timely responded on May 14, 2025.  *See* Doc. 42-1 ¶ 4.

3

Lighthouse List's responses confirm that it lacks relevant contacts with New Jersey. Lighthouse List disclosed that from December 1, 2023 to the present, it did not sell consumer data lists ("Data Lists") to any customers with a New Jersey billing address; it did not conduct any advertising or marketing activities within New Jersey or target any such activities specifically to New Jersey, for Data Lists or otherwise; it has not entered into contracts, agreements, or arrangements in New Jersey, or with customers with a New Jersey billing address, in connection with or for the provision of Data Lists; and it has not directly acquired from a New Jersey-based entity, or agencies or instrumentalities of the State of New Jersey, data for the Data Lists. *See* Rao Decl. Ex. B at 5-7. Lighthouse List also disclosed that since May 14, 2020, it has not entered any contract executed or to be performed in whole or in part in New Jersey in connection with the Data Lists product or otherwise; has not commenced any legal actions in New Jersey; and has not applied for tax credits or tax deductions for taxes paid in New Jersey. *See id.* at 10-12.

Three weeks after Lighthouse List served its responses, Plaintiffs sent it and other defendants a generic letter asserting that defendants' discovery responses were deficient. *See* Doc. 42-3. But Plaintiffs did not explain *how* the responses were deficient, articulate their theory of jurisdiction, or cite a single case in support of their position. On June 9, 2025, Lighthouse List's counsel joined a group meet-and-confer with other defendants' counsel and Plaintiffs' counsel to discuss Plaintiffs' letter. *See* Doc. 42-1 ¶ 8. On that call, Lighthouse List's counsel stated that an individualized meet-and-confer as to Lighthouse List might be more appropriate. *See* Rao Decl. ¶ 6. After the call, on June 9 and June 17, Lighthouse List's counsel emailed Plaintiffs' counsel seeking such a meet-and-confer. *See id.* ¶¶ 7-8. Plaintiffs' counsel did not reply to those emails to schedule a meet-and-confer before filing the instant motion. *See id.* ¶ 9; *see also* Rao Decl., Ex. D. *Contra* L. Civ. R. 37.1 (requiring a "good faith effort" to resolve any discovery issues).

**LEGAL STANDARD**

Jurisdictional discovery is appropriate only when "the plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [Lighthouse List] and the forum state." *Aldossari*, 49 F.4th at 259 (cleaned up). "A plaintiff cannot show up in court with 'bare allegations' and force defendants to start handing over evidence." *Id.* (quoting *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010)). Nor may a plaintiff cure a complaint's bare jurisdictional allegations by engaging in a "fishing expedition" "under the guise of jurisdictional discovery." *Eurofins*, 623 F.3d at 157.

"A court should not permit discovery as a matter of course; before allowing jurisdictional discovery to proceed, the court must be satisfied that there is some indication that the particular defendant is amenable to suit in this forum." *Eastman Chem. Co. v. AlphaPet Inc.*, 2011 WL 6004079, at *2 (D. Del. Nov. 4, 2011) (cleaned up). The basis for jurisdictional discovery must be "rooted in the reasonable particularity of the complaint's allegations." *Dalal v. Clearview AI Inc.*, 2025 WL 1726259, at *9 (D.N.J. May 1, 2025), *report and recommendation adopted*, 2025 WL 1725010 (D.N.J. June 20, 2025) (cleaned up). While the complaint's factual allegations are taken as true, a plaintiff must come forward with *some* competent evidence that personal jurisdiction exists to justify jurisdictional discovery. *Eastman Chem. Co.*, 2011 WL 6004079, at *2.

**ARGUMENT**

**I.      Plaintiffs Are Not Entitled to Jurisdictional Discovery Under the Effects Test.**

Plaintiffs cannot rely on the effects test to justify further jurisdictional discovery because Daniel's Law is not an "intentional tort" and because Plaintiffs have failed to allege a prima facie case of jurisdiction under the effects test.

### A. The Effects Test Does Not Apply Because Daniel's Law Is Not an Intentional Tort.

Plaintiffs cannot rely on the effects test because it applies only to intentional torts. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998). But this Court has held that Daniel's Law "must be read" to impose a negligence standard to avoid both "absurd results" and "constitutional repugnancy." *Atlas Data Priv. Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 340-41 (D.N.J. 2024). The Court could not have been clearer that "liability for actual or liquidated damages does not demand a showing of specific intent or of willful or reckless conduct." *Id.* at 340. The Court also specifically clarified that, although the "New Jersey Model Civil Jury Charges classify the various privacy torts under the rubric 'Intentional Torts,'" that classification did not have the "imprimatur of the New Jersey Supreme Court" for the tort the Court viewed as most akin to Daniel's Law. *Id.* at 341 & n.9. The Court's ruling, although on appeal, has been the law of the case since November 26, 2024, and the Court can reject Plaintiffs' invocation of the effects test based on that ruling alone. *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case" absent "extraordinary circumstances").

Undeterred, Plaintiffs assert a novel, expansive, and legally unmoored theory: that so long as *some* element of a statutory claim is volitional, the entire claim becomes an intentional tort and the effects test becomes available. *See* Doc. 42 at 5-6. Applied here, Plaintiffs suggest that any act of disclosure is necessarily intentional (*id.* at 5 n.4) and that, because disclosure is an element of Daniel's Law, Daniel's Law is an intentional tort. That argument fails several times over.

First, conflating knowledge and intent, Plaintiffs argue that "virtually all" acts of disclosure under Daniel's Law "inherently involve a knowing act of providing information to a third-party." Doc. 42 at 5 & n.4 (cleaned up). That is obviously incorrect. As Plaintiffs well know, Daniel's

Law defines "disclose" broadly to mean, *inter alia*, to "give," "provide," "deliver," and "distribute." N.J. Stat. Ann. § 56:8-166.1(d). Any of those disclosures could be inadvertent or accidental. Consider if an entity intended to disclose data to a customer about Mary Smith, a Maryland resident, but unknowingly and inadvertently disclosed data about Bob Jones, a New Jersey resident, only later realizing as much. In that world, Plaintiffs could not seriously contend that the entity intended to harm Bob, disclose information about him, or direct its conduct towards the New Jersey forum—even if in some thin sense it disclosed Bob's information volitionally. And if the entity had received a Daniel's Law takedown request from Bob, the unintentional but possibly negligent disclosure of his information might trigger liability. In this way, an actionable "disclosure" under Daniel's Law does not need to be intentional or even knowing, at least as the law currently stands before this Court. Plaintiffs are wrong to the extent they suggest otherwise.

Beyond that, the mere fact that an element of a tort involves volitional conduct does not convert the tort into an "intentional tort," as Plaintiffs contend. Such a rule would eviscerate the distinction between negligent torts and intentional torts, given that negligent conduct is equally volitional. In *Ingraham v. Ortho-McNeil Pharmaceutical*, for example, confronting a claim for intentional infliction of emotional distress, the court explained that the relevant question was whether "[defendant] intended to cause plaintiff emotional distress" not whether the defendant's conduct towards the plaintiff was "cold and careless" or "negligent of her emotional state." 422 N.J. Super. 12, 25 (App. Div. 2011). The Restatement of Torts reinforces this basic notion, defining "intent" to mean a state of mind in which "the actor *desires to cause consequences of his act*, or that [] believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A (1965) (emphasis added). Comment "a" to Section 8A elucidates the concept with the following example: "When an actor fires a gun in the midst of the Mojave Desert,

7

he intends to pull the trigger; but when the bullet hits a person who is present in the desert without the actor's knowledge, he does not intend that result. 'Intent' is limited, wherever it is used, to the consequences of the act." *Id.* cmt. a. Those settled principles negate Plaintiffs' absurd contention that a tort is intentional so long as it involves volitional conduct but does not require that the actor intend the consequences of the conduct.[1]

Relatedly, and dispositively, *Calder* is clear that its effects test only applies where the *tortious* conduct is intentional. 465 U.S. at 789-90 (applying effects test when reporters' "intentional, and allegedly tortious, actions were expressly aimed" at the forum). As discussed, Plaintiffs try to evade that stricture by claiming that "the act of disclosure" is the "conduct element" of Daniel's Law. Doc. 42 at 6. But disclosing a covered person's protected information, standing alone, is not tortious. *See* Defs.' Opening MTD Br. at 17-18. To the contrary, it is protected speech. *See Atlas*, 758 F. Supp. 3d at 333-34. The tortious conduct—the act that gives rise to liability under Daniel's Law—is the negligent failure to suppress protected information after receiving a takedown notice. *See id.* at 341. *That* tortious conduct is subject to a negligence standard, not an

---

[1] Plaintiffs attempt to analogize Daniel's Law to torts that allegedly require intent only as to the conduct, not to its consequences. *See* Doc. 42 at 6. That effort fails. Although battery requires only intentional contact, battery doctrine arises from the unique concerns that surround unconsented physical contact of another person. *Cf. Monturi v. Englewood Hosp.*, 246 N.J. Super. 547, 552 (App. Div. 1991). Daniel's Law, by contrast, does not impose liability for physical contact. As to continuing trespass, the Restatement does not characterize the volitional conduct itself as always "intentional," only "tortious[]," where such conduct could be undertaken negligently. *See* Restatement (Second) of Torts §§ 6 (defining "tortious"), 161 cmt. b. Meanwhile, as to intentional nuisance, the cited Restatement provision expressly adopts the intent standard articulated in Section 8A and clarifies that the alleged tortfeasor "must either act ***for the purpose of causing [an invasion]*** or know that it is resulting or is substantially certain to result from his conduct." *See id.* § 825 cmts. a, c. Finally, the common law disclosure tort, as this Court held, imposes a "negligence test" even if it requires some volitional conduct. *See Atlas*, 758 F. Supp. 3d at 341 & n.9 (citing *Romaine v. Kallinger*, 537 A.2d 284, 291-92 (N.J. 1988)).

intent standard. *See id.* Without an intentional tort, the *Calder* effects test is unavailable. *Calder*, 465 U.S. at 788.[2]

In sum: Plaintiffs ask this Court to simultaneously conclude that, for purposes of the effects test, Daniel's Law is an intentional tort under Plaintiffs' unworkable theory of intent but that, for merits purposes, Daniel's Law is a negligence tort. Plaintiffs cannot have it both ways. If Daniel's Law is akin to a tort, it is a negligence tort, as this Court held. *Calder*'s effects test does not apply.

### B. Even if The Effects Test Were Available, Plaintiffs Have Not Pleaded Jurisdiction Under It.

Even if *Calder*'s effects test could apply to a Daniel's Law claim (it cannot), Plaintiffs fail to plead facts satisfying that test as to Lighthouse List. In *Calder*, the Supreme Court held that personal jurisdiction may arise from the defendant's intentional out-of-state conduct when that conduct is "calculated to cause injury" in the forum. 465 U.S. at 791. The Third Circuit applies *Calder* "conservative[ly]": the test "can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity." *IMO Indus.*, 155 F.3d at 265 (emphasis in

---

[2] Plaintiffs cursorily suggest that because they have alleged that Lighthouse List willfully violated Daniel's Law, they have alleged an intentional tort. *See* Doc. 42 at 6. Plaintiffs are wrong. In support of their position, Plaintiffs misleadingly cite an inapposite, criminal child-endangerment case in which the court equated willfulness, as used in a statute governing child abuse, with knowledge, not intent. *State v. N.I*, 349 N.J. Super. 299, 315 (App. Div. 2002) ("[W]illfully *as used in Title 9* does not refer to a different mental state than *knowingly*[.]") (emphasis added). Plainly, intent and knowledge (even intent and recklessness) are materially different mental states. *See id.* at 315-16 ("A rational jury, given an appropriate definition of [willfully] forsaking, could have concluded, even in the face of defendant's unconscionable behavior, that he did not intend to permanently abandon his child."); Restatement (Second) of Torts § 8A (1965) cmt. b ("As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness, as defined in § 500. As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence, as defined in § 282. All three have their important place in the law of torts, *but the liability attached to them will differ*.") (emphasis added).

original).  *See also Hasson v. FullStory, Inc.*, 114 F.4th 181, 187 (3d Cir. 2024) (under effects test, plaintiff must plead that "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum").  The Complaint collapses far short of these requirements.

As a threshold matter, the Complaint's lone jurisdictional allegation does not even assert a *Calder*-based theory of jurisdiction.  It states that the parties "reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey."  Compl. ¶ 41.  Setting aside that Plaintiffs plead no facts supporting that theory, it is also a purposeful availment theory.  *See Hasson*, 114 F.4th at 186 (contrasting the effects test with the traditional test, which relies on "[d]irect in-forum activities").  Plaintiffs' exclusive reliance on a purposeful availment theory in their operative jurisdictional allegation confirms that Plaintiffs now seek to shift course midstream and pivot to a *Calder* theory.  But Plaintiffs cannot amend their pleading through a motion to compel.  *Cf. Commw. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (cleaned up).

Equally problematic, the Complaint contains no allegations about how Lighthouse List expressly aimed "tortious conduct"—*i.e.*, the alleged negligent failure to timely action covered persons' takedown requests—at New Jersey.  Plaintiffs do not allege, for example, that Lighthouse List continued to make data available only to New Jersey customers or that Lighthouse List only ignored takedown requests that reflected New Jersey-specific information.  Rather, under Plaintiffs' theory, the harm of any continued availability of protected information is that *anyone* can access it, regardless of location.  But the mere foreseeability that a *third party* might *unilaterally* request information from Lighthouse List *about* a New Jersey-connected individual

says nothing about whether Lighthouse List expressly aimed tortious conduct at New Jersey, which is the only relevant question.[3]

The Third Circuit has made clear that, under the effects test, personal jurisdiction does not lie merely because the "reach of a defendant's cyber activity" "encompasses data belonging or related to individuals hailing from the forum state." *Dalal*, 2025 WL 1726259, at *8 (interpreting *Hasson*, 114 F.4th at 191).[4]  Indeed, "even a defendant's knowledge or awareness that a particular state's residents will be affected will not suffice to satisfy the *Calder* test." *Id.  See also IMO Indus.*, 155 F.3d at 263 ("[T]he mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy *Calder*.").  In *Dalal*, this Court distinguished between data collected from individuals "who happened to reside in New Jersey" and data collected from those individuals "specifically *because* they live [t]here," where only the latter might satisfy the "express aiming" requirement.  2025 WL 1726259, at *8 (emphasis in original).  Here, at most, Plaintiffs challenge conduct regarding individuals "who happened to reside in New Jersey;" they do not allege Lighthouse List disclosed any covered persons' information "specifically *because* they live [in New Jersey]." *Id.  See also Hasson*, 114 F.4th at 192 (listing, as examples of conduct that could show express aiming,

---

[3] As the Complaint tacitly acknowledges, one can be a covered person under the law without residing in New Jersey.  *See* Compl. ¶¶ 8, 24 ("Covered Person" includes individuals who previously resided or worked in New Jersey, and family members residing at the same address as an individual who previously resided or worked in New Jersey); N.J. Stat. Ann. § 56:8-166.1(d) (defining "Covered Person").  That reality negates Plaintiffs' suggestion that the disclosure of an alleged covered person's information here necessarily has "effects" in New Jersey.  *See* Doc. 42 at 7 (asserting, without citation, that disclosure of a covered person's information will "expose them to harm in New Jersey"); *id.* at 8 (similar).

[4] For similar reasons, hosting generally accessible data about New Jersey-connected individuals, along with individuals from every other state, does not establish personal jurisdiction.  *See* Defs.' Opening MTD Br. at 15.

allegations that a website's search-by-state feature is "exclusively available to people in" the forum, or that the website deployed code "only to users who search for" locations in the forum).

This leaves Plaintiffs' "constructive knowledge" theory of express aiming. Doc. 42 at 7-8. To support that theory, Plaintiffs rely on (and selectively quote from) a Ninth Circuit case that departs from binding Third Circuit precedent. According to Plaintiffs, in the Ninth Circuit, the "express aiming element is satisfied if defendant 'knows—either actually or constructively'—that conduct is aimed at the forum." *Id.* (quoting *Briskin v. Shopify*, 135 F.4th 739, 757 (9th Cir. 2025)). What *Briskin* actually says is that "a company's internet activity may" subject the company to specific personal jurisdiction "if the company knows—either actually or constructively—about its customer base there and exploits that base for commercial gain." 135 F.4th at 757 (internal quotation omitted). That is a far cry from Plaintiffs' theory here, that mere receipt of a takedown request gives rise to constructive knowledge of potential harm in New Jersey.[5] *Briskin*'s reference to knowing about and exploiting a "customer base" in the forum is especially inapt because Lighthouse List has already disclosed that, during the relevant time period, it did not sell Data Lists to any customers with a New Jersey billing address. *See* Rao Decl., Ex. B at 5.

But more importantly, this Court should decline to follow *Briskin* because it departs from binding Third Circuit precedent on the effects test. In *Thomas v. Papa John's International, Inc.*, relying on *Briskin*, the Ninth Circuit recently held that Papa John's "expressly aim[ed] its conduct

---

[5] Plaintiffs' reliance on *Vonbergen* is similarly inapt for at least three reasons. First, Plaintiffs quote dicta in which the court described the plaintiff's argument and related authority, not its own reasoning or holding. Second, the court's reference to constructive knowledge came from a district court decision within the Ninth Circuit, whose decisions conflict with the Third Circuit's. And third, the *Vonbergen* court did not hold that "constructive knowledge" was sufficient under *Calder* but rather required a showing that the defendant *"knew* [the plaintiff] would suffer the brunt of the harm caused by the tortious conduct in the forum." *Vonbergen v. Liberty Mutual Insurance Company*, 705 F. Supp. 3d 440, 451-52 (E.D. Pa. 2023) (emphasis in original).

at California" because Papa John's "operates an interactive website with national viewership and scope that appeals to, and profits from, an audience in California." 2025 WL 1704437, at *1 (9th Cir. June 18, 2025) (cleaned up). But in *Hasson*, the Third Circuit held the exact opposite on materially identical allegations. *See* 114 F.4th at 190-91 ("Schnur neither alleged that Papa Johns' website advertises a product or service bearing any special significance to Pennsylvania, nor that it features Pennsylvania-centric content. Indeed, pizza has national appeal. So Papa Johns did not expressly aim its Session Replay Code at Pennsylvania by operating a website that was accessible in the forum."). *See also Dalal*, 2025 WL 1726259, at *8 ("[A]s *Hass[o]n* held . . . simply 'transmitting computer code to a browser that happens to be in [the forum state]' does not constitute intentional targeting of the forum as required to establish specific jurisdiction under the effects test.") (third alteration in original) (quoting *Hasson*, 114 F.4th at 191).

Setting aside constructive knowledge, to the extent Plaintiffs argue that receiving a takedown request from a covered person gives rise to *actual* knowledge of the potential exposure to harm in New Jersey, that is still insufficient under *Calder*. The Third Circuit has "rejected the argument that the expressly aiming requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Hasson*, 114 F.4th at 196 (cleaned up). *Calder* requires more: Plaintiffs must allege that Lighthouse List *knew* the assignors Plaintiffs here would suffer harm in New Jersey *and* that Lighthouse List aimed its tortious conduct at the forum. *See Marten v. Godwin*, 499 F.3d 290, 299 (3d Cir. 2007). Plaintiffs have not done so here.

Finally, Plaintiffs cannot bootstrap their personal jurisdiction argument to Plaintiffs' or the assignors' own unilateral contacts with New Jersey. Plaintiffs argue Lighthouse List's alleged receipt of takedown requests from New Jersey-connected individuals set off a chain of events that

13

establish in personal jurisdiction in New Jersey. *See* Doc. 42 at 7-8. But because *Calder* does not "carve out a special intentional torts exception to the traditional specific jurisdiction analysis," *IMO Indus.*, 155 F.3d at 265, it does not disturb the bedrock principle that a plaintiff or third party cannot unilaterally create the necessary contacts between the defendant and the forum. *See Walden v. Fiore*, 571 U.S. 277, 286 (2014) (principles that jurisdiction cannot rest on a defendant's random, fortuitous, or attenuated contacts with the forum or the plaintiff's unilateral activity "apply when intentional torts are involved") (cleaned up); *Scott v. Lackey*, 587 F. App'x 712, 716 (3d Cir. 2014) (per curiam) (cleaned up) (same).

Courts have held time and again that a defendant's responses to a plaintiff's actions do not reflect the defendant's targeting of the forum. That principle alone disposes of Plaintiffs' jurisdictional theories. *See Newman v. N.C. Ins. Underwriting Ass'n*, 2020 WL 6689756, at *7 (D.N.J. Nov. 13, 2020) ("[Defendant's] phone call and letter . . . were merely responses to Plaintiff's actions. It is well-settled that unilateral activity on the part of a plaintiff does not make a defendant amenable to personal jurisdiction."); *Booker v. Twp. of Cinnaminson*, 2012 WL 4791126, at *2 (E.D. Pa. Oct. 5, 2012) (defendant's letters to plaintiff, a forum resident, "were in response to [plaintiff's] unilateral activity, and thus do not demonstrate the [defendant] deliberately targeted [the forum]"); *Pinninti v. NRI Med. Coll. (NRIAS)*, 2010 WL 2483992, at *8 (D.N.J. June 4, 2010) (rejecting specific jurisdiction in New Jersey when a contract between the parties was allegedly made in New Jersey but "came about as a result of the plaintiffs' unilateral actions" and the defendant's actions "directed to the plaintiffs in New Jersey" "were in response to actions of the plaintiffs and occurred in Michigan").

14

Even if the *Calder* test could apply here, Plaintiffs have failed to allege a prima facie case of jurisdiction under that test. Accordingly, this Court should deny the motion to compel to the extent predicated on the *Calder* test.

**C.    Plaintiffs Have Not Alleged Personal Jurisdiction Under the Purposeful Availment Test.**

In two paragraphs, Plaintiffs tepidly contend that they have adequately pleaded personal jurisdiction under the purposeful availment test—the only basis for personal jurisdiction arguably alleged in the Complaint. Doc. 42 at 9. In support, Plaintiffs offer, for the first time, a new allegation: that Lighthouse List "purposefully collected data on New Jersey residents—in many cases, from New Jersey public records[.]" *Id.* There are several fatal problems with that approach.

*First*, Plaintiffs' apparent suggestion that Lighthouse List reached into New Jersey to acquire data from New Jersey public records located within the State is not pleaded *anywhere* in the Complaint. The Complaint has little, if anything, to say about data collection and focuses instead on alleged *disclosures*. *See, e.g.*, Compl. ¶¶ 36, 38, 40. But the basis for jurisdictional discovery must be rooted in the reasonable particularity of the Complaint's allegations, not on unsupported statements in a motion to compel discovery. *See Dalal*, 2025 WL 1726259, at *9.

*Second*, setting aside Plaintiffs' pleading failure, the unrebutted evidence contradicts Plaintiffs' suggestion. Lighthouse List stated in its discovery responses that "since December 1, 2023, [Lighthouse List] has not directly acquired from a New Jersey-based entity, or agencies or instrumentalities of the State of New Jersey, data for the Data Lists." Rao Decl., Ex. B at 7.

*Third*, the mere allegation that Lighthouse List collected or maintained data *about* New Jersey residents does not establish a contact between Lighthouse List and New Jersey forum *itself*. *See Walden*, 571 U.S. at 289 (lower court erred "by shifting the analytical focus from [defendant's]

contacts with the *forum* to his contacts with [the plaintiffs]") (emphasis added); Defs.' Opening MTD Br. at 15.

*Fourth*, to the extent Plaintiffs seek to merge the purposeful availment and *Calder* inquiries—*see* Doc. 42 at 9 (arguing that assertions that Lighthouse List collects data from New Jersey public records should be "taken together with the torts directed at New Jersey")—*Hasson* forecloses jurisdiction for the reasons explained. *See Dalal*, 2025 WL 1726259, at *8 (explaining, under *Hasson*, that the reach of a defendant's cyber activity "does not establish personal jurisdiction merely because that activity encompasses data belonging or related to individuals hailing from" New Jersey). *See also McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1041 (N.D. Cal. 2019) (rejecting specific jurisdiction in California over nonresident software developer even when developer allegedly knew its software would be installed on, and collect data from, devices in California).

Because Plaintiffs have failed to allege that Lighthouse List has any contacts with the New Jersey forum, necessarily, Plaintiffs cannot establish that their claims arise from or relate to those nonexistent contacts.  In a throwaway sentence, Plaintiffs assert they satisfy the nexus prong of the specific jurisdiction analysis because "Defendants' contacts with the forum revolve around their collection and disclosure of New Jersey data concerning New Jersey residents."  Doc. 42 at 9-10.  But again, Plaintiffs have failed to allege that Lighthouse List collected data from New Jersey, the evidence shows the opposite, and alleged disclosures of data concerning covered persons who may or may not even reside in New Jersey say nothing about whether Lighthouse List *itself* had contacts with the New Jersey *forum*.  Moreover, merely *collecting* data about New Jersey residents is not sufficiently related to the challenged conduct (*i.e.,* negligently *disclosing* protected information

ten business days after receiving a takedown request) because Daniel's Law does not purport to regulate collection, only disclosure.

Plaintiffs have no response to these points and the others Defendants made in their Opening Brief. *See* Defs.' Opening MTD Br. 16-21.

*    *    *    *

Plaintiffs' Complaint contains only threadbare allegations about personal jurisdiction, and the new allegations and theories Plaintiffs improperly attempt to assert in their motion to compel are meritless in any event. Having failed, by a wide margin, to carry their burden, Plaintiffs should not be permitted to undertake additional intrusive discovery. *See 3G Licensing, S.A. v. Lenovo Grp. Ltd.*, 2019 WL 3974539, at *8 (D. Del. Aug. 22, 2019), *report and recommendation adopted*, 2019 WL 7635823 (D. Del. Sept. 19, 2019) (under "Third Circuit case law," plaintiff is not "entitled to jurisdictional discovery if it has not made out a *prima facie* showing of personal jurisdiction").

## II.    Plaintiffs' Challenges to Lighthouse List's Discovery Responses Are Meritless.

Any purported deficiencies Plaintiffs have identified with Lighthouse List's discovery responses are illusory because Plaintiffs' underlying discovery requests are untethered to any well-pleaded and viable jurisdictional theory. Beyond that, many of the discovery requests extend well beyond the narrow jurisdictional inquiry here; improperly seek discovery on core merits issues before Plaintiffs have even pleaded that this Court has personal jurisdiction over Lighthouse List; and flout Rule 26's emphasis on proportionality. *See* Fed. R. Civ. P. 26(b)(1). As the Third Circuit has explained, "jurisdictional discovery is not a license for the parties to engage in a fishing expedition," and the district court "should take care to circumscribe the scope of discovery to only the factual questions necessary to determine its jurisdiction." *Shuker v. Smith & Nephew, PLC*,

17

885 F.3d 760, 782 n.20 (3d Cir. 2018) (cleaned up).  Against that backdrop, Lighthouse List briefly responds to Plaintiffs' arguments regarding particular discovery requests.

### A. Requests Concerning Lighthouse List's Sales Into and Revenue from New Jersey.[6]

Lighthouse List already responded that, from December 1, 2023 to the present, it did not sell Data Lists to any customers with a New Jersey billing address.  *See* Rao Decl., Ex. B at 5. With respect to Interrogatory No. 2, Plaintiffs claim they are entitled to information regarding whether Lighthouse List sold Data Lists to anyone with a New Jersey "mailing address."  Doc. 42 at 13.  Setting aside that an "individual's contract with an out-of-state party" cannot alone "automatically establish sufficient minimum contacts," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985), and without waiving any other objections, Lighthouse List is willing to supplement its response to address mailing addresses and expects its supplemental response to establish that Lighthouse List did not sell Data Lists to any customers who had a New Jersey mailing address from December 1, 2023 to the present.

---

[6] *See* **Interrogatory No. 2** ("For each product, service, or digital platform identified in response to Interrogatory Number 1, provide information regarding all access, purchase, or use of the product since December 1, 2023 by anyone in New Jersey."); **RFP No. 2** ("All documents reflecting or relating to Defendant's revenues, profits, or income derived from any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law, including without limitation for products or services offered in New Jersey or to New Jersey customers."); **RFP No. 3** ("All documents reflecting or relating to Defendant's share of revenues, profits, or income derived from activities in New Jersey and any other state reflecting the state in which the activities generating the revenues, profits, or income occurred."); **RFP No. 19** ("All documents reflecting or relating to the products or services that Defendant has delivered or otherwise made available to businesses and individuals with information that includes New Jersey addresses, and the total amount and percentage of Defendant's revenue from those services or products."); **RFP No. 20** ("All documents reflecting or relating to the businesses and individuals in the state of New Jersey that have received products or services from Defendant, and the total amount and percentage of revenue Defendant has earned from those businesses and individuals.").

As a result, Plaintiffs' requests in RFP Nos. 2-3 and 19-20, which, in substance, seek documents related to the share of Lighthouse List's revenue attributable to New Jersey will be mooted and/or fully resolved by Lighthouse List's supplemental response to Interrogatory No. 2. *See* Doc. 42 at 22-23, 34-36.  No further discovery on Lighthouse List's revenues is relevant or proportional to the jurisdictional inquiry.

### B.    Requests Concerning Lighthouse List's Marketing Activities.[7]

Plaintiffs misleadingly suggest that Lighthouse List responded to Interrogatory No. 4 only to say that "[its] marketing activities are nationwide and thus irrelevant to jurisdiction," and claim Plaintiffs are "entitled to examine Defendants' marketing activities in New Jersey."   Doc. 42 at 15.  But Lighthouse List already disclosed that "from December 1, 2023 onward, it did not conduct any advertising or marketing activities within the State of New Jersey" and directed Plaintiffs to Lighthouse List's nationally accessible social media accounts.  Rao Decl., Ex. B at 6 & n.2.  That is sufficient, including as to RFP 1(b), and Plaintiffs fail to show otherwise.

### C.    Requests Concerning Lighthouse List's Contracts.[8]

Lighthouse List already disclosed that since December 1, 2023, it "has not entered into contracts, agreements, or arrangements in New Jersey, or with customers with a New Jersey billing

---

[7] *See* **Interrogatory No. 4** ("Identify any advertising or marketing activities conducted by Defendant or anyone acting on Defendant's behalf in New Jersey, including nationwide or multistate marketing activities that included marketing or advertising in New Jersey."); **RFP No. 1b** ("All documents reflecting or relating to Defendant's [m]arketing, advertising, soliciting, or offering of any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law, including without limitation in New Jersey or to New Jersey customers.").

[8] *See* **Interrogatory No. 5** ("Identify any entity with whom Defendant has since December 1, 2023 had any contracts, agreements, or arrangements in connection with or for the provision of any product, service, or digital platform that has published, provided access to, or otherwise made available information subject to Daniel's Law, including without limitation entities in New Jersey."); **RFP No. 1(c)** ("All documents reflecting or relating to Defendant's [c]ontracts, agreements, or arrangements with any company or individual in New Jersey (including without

address, in connection with or for the provision of Data Lists" and that, since May 14, 2020, it "has not entered into any contract that was executed in New Jersey or was to be performed in whole or in part in New Jersey in connection with the Data Lists product or otherwise."    Rao Decl., Ex. B at 7, 10.   Consistent with those responses, Lighthouse List stated in response to RFP No. 1(c) that, based on a reasonable search, it "has not identified contracts or agreements with any person in New Jersey for the provision of the Data Lists."   *See* Rao Decl., Ex. C at 7.   Based on those representations, any remaining contracts Lighthouse List may have entered into that happen to include a New Jersey forum-selection clause, to the extent they even exist, would not arise from or relate to Plaintiffs' claims here, so are irrelevant to personal jurisdiction.   *Contra* Doc. 42 at 37.

While Plaintiffs demand to know *all* the entities Lighthouse List contracted with in connection with Lighthouse List's Data Lists product, regardless of whether those entities have any New Jersey nexus, that demand is based only on rife speculation that Lighthouse List may have had an alter ego or agency relationship with such an entity.   *See* Doc. 42 at 16.   Nowhere does the Complaint allege jurisdiction via an agency or alter ego theory, which imposes a demanding standard before courts will impute jurisdictional contacts between separate entities.   *See DNA Genotek Inc. v. Spectrum DNA*, 224 F. Supp. 3d 359, 367 (D. Del. 2016) (explaining that "[c]ourts that have relied upon the agency theory of jurisdiction have required, at minimum, the existence of some corporate affiliation or control" and rejecting jurisdiction on an agency theory even when

---

limitation New Jersey agencies, professionals, vendors, or customers) for the provision of any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law."); **RFP No. 22** ("All documents reflecting or relating to any contracts that Defendant (including any predecessors and agents) has executed with a business with operations in New Jersey or with a New Jersey forum selection clause.").

two companies collaborated with one another).  Any incremental discovery on these issues would amount to a blatant fishing expedition.

### D.    Requests Concerning Lighthouse List's Data Sources.[9]

Lighthouse List already disclosed that since December 1, 2023, "it has not directly acquired from a New Jersey-based entity, or agencies or instrumentalities of the State of New Jersey, data for the Data Lists product."  Rao Decl., Ex. B at 7.  Yet Plaintiffs claim they need to know if Lighthouse List obtained data from a "non-New Jersey source," again based on the fanciful and unpleaded theory that Lighthouse List has an agency or alter-ego relationship with such an entity that itself has contacts with the forum.  Doc. 42 at 17.  Discovery is not warranted based on such speculation.  *See Aldossari*, 49 F.4th at 259 ("factual allegations" must "suggest with reasonable particularity the possible existence of the requisite contacts between [Lighthouse List] and the forum state") (cleaned up); *DNA Genotek*, 224 F. Supp. 3d at 367.

### E.    Requests Concerning Lighthouse List's Compliance with New Jersey Laws Generally.[10]

Plaintiffs seek audits, reviews, or evaluations related to Lighthouse List's compliance with *any* New Jersey laws.  Those sweeping requests seek information irrelevant to the narrow question

---

[9] *See* **Interrogatory No. 6** ("Identify all sources from which Defendant obtained information related to information subject to Daniel's Law, including without limitation entities in New Jersey and any public records made available by the State of New Jersey, any agency or instrumentality of the State of New Jersey, any county, municipality, or other local government in New Jersey, or any agency or instrumentality thereof."); **RFP No. 1(d)** ("All documents reflecting or relating to Defendant's [i]nvolvement, participation, or role in the collecting, publishing, disseminating, selling, or providing access to, or otherwise making available information subject to Daniel's Law, including but not limited to the sources, methods, purposes, and recipients of such information.").

[10] *See* **Interrogatory No. 7** ("Identify any audit, review, or evaluation of Defendant conducted since December 1, 2023 by any officers, directors, employees, contractors, vendors, and other individuals or entities acting on Defendant's behalf for compliance ***with New Jersey law*** for any of Defendant's services, products, or digital platforms that publish, provide access to, or otherwise makes available information subject to Daniel's Law.") (emphasis added); **RFP No. 10** ("Any and all documents reflecting or relating to any training, education, or guidance provided by Defendant

under the effects test whether Lighthouse List specifically declined to implement Daniel's Law takedown requests from covered persons residing in New Jersey *because* they lived there. Plaintiffs are wrong to suggest that mere awareness of or compliance with forum-specific privacy laws evinces deliberate targeting of the forum.  *Cf. Castelaz v. Estee Lauder Cos.*, 2024 WL 136872, at *5 (N.D. Ill. Jan. 10, 2024) (following "[c]ourts in other jurisdictions [that] have found that invoking a forum state's privacy laws on a website or in terms of use, standing alone, is insufficient to show that a defendant targeted consumers in the forum state" and collecting cases).

Plaintiffs contend RFP Nos. 10, 11, and seemingly 21 seek documents relevant to whether Lighthouse List somehow "systematically served" a New Jersey market for the Data Lists product. *See* Doc. 42 at 29-30, 36 (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021)).  *See also id.* at 36 (claiming "compliance documents focused on New Jersey privacy laws show Defendants' knowledge that they sell, transfer, or otherwise transact data with or within the state of New Jersey").  But Lighthouse List's evidence refutes that contention because it establishes that Lighthouse List is a Florida LLC with no meaningful New Jersey presence (*see supra* p. 2) that did not directly acquire data for its Data Lists product from New Jersey entities and did not sell its relevant product to any customers with a New Jersey billing address within the relevant

---

or any other related entity to its employees, agents, or representatives regarding any service that provides access to personal information of New Jersey residents, including but not limited to the legal requirements, obligations, and rights under the Fair Credit Reporting Act ("FCRA"), the New Jersey Identity Theft Prevention Act ("NJITPA"), the New Jersey Fair Credit Reporting Act ("NJFCRA"), *or any other New Jersey state law or regulation*.") (emphasis added); **RFP No. 11** ("Any and all documents reflecting or relating to any audits, reviews, or evaluations conducted by Defendant or any other related entity or any third-party regarding compliance under New Jersey law for any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law."); **RFP No. 21** ("All documents reflecting or relating to Defendant's modification of any product or service to address New Jersey laws and regulations, including but not limited to Daniel's Law, NJITPA, and NJFCRA.").

time period.  Beyond that, the hypothetical existence of internal compliance documents referencing New Jersey laws does not establish that Lighthouse List has contacts with the New Jersey forum itself.  *See Walden*, 571 U.S. at 289.  *Cf. Castelaz*, 2024 WL 136872, at *5.

**F.    Requests Concerning Lighthouse List's Alleged Receipt of and Response to Plaintiffs' and Alleged Covered Persons' Unilaterally Sent Daniel's Law Requests.**[11]

Plaintiffs propound several requests concerning whether Lighthouse List received the takedown requests at issue here—a central merits issue—and how Lighthouse List responded, if at all, to those requests.  These requests are irrelevant to the jurisdictional inquiry because Daniel's Law requests sent to Lighthouse List, to the extent even sent by New Jersey residents, do

---

[11] *See* **Interrogatory No. 8** ("Identify all officers, directors, employees, contractors, vendors, and other individuals or entities who, on Defendant's behalf, have reviewed, analyzed, processed, and/or responded to any Daniel's Law requests received since January 12, 2023."); **Interrogatory No. 9** ("Describe all actions taken by Defendant to respond to any written requests under Daniel's Law received since January 12, 2023, including all communications with persons who sent nondisclosure requests to Defendant requesting redaction of their home addresses and phone numbers."); **Interrogatory No. 10** ("Identify any address or phone number of a New Jersey resident that remained available in the database associated with any of Defendant's products, services, or digital platforms 10 days or more after Defendant received a nondisclosure request from a person asserting a right to nondisclosure under Daniel's Law, including any address or phone number of a New Jersey resident that is currently available in the database of information associated with any of Defendant's products, services, or digital platforms."); **RFP No. 5** ("All documents reflecting or relating to Defendant's communications, correspondence, or interactions with Plaintiffs or any other New Jersey residents who sent Daniel's Law Requests to Defendant or any other entity associated with Defendant."); **RFP No. 7** ("All documents reflecting or relating to Defendant's policies, procedures, or practices for a. Processing, responding to, or complying with Daniel's Law Requests from New Jersey residents sent to Defendant or any other related entity. b. Handling information related to New Jersey residents."); **RFP No. 14** ("All documents reflecting or relating to Defendant's receipt of nondisclosure requests pursuant to Daniel's Law, including the date of receipt, the manner of receipt, the number of requests, the contents of those requests, and Defendant's analysis of those requests."); **RFP No. 15** ("All documents reflecting or relating to Defendant's response to Daniel's Law requests received from the Covered Persons and Individual Plaintiffs."); **RFP No. 16** ("All documents reflecting or relating to any changes to Defendant's processes regarding Daniel's Law nondisclosure requests or any other requests to remove personal information of New Jersey residents.").

not constitute Lighthouse List's *own* contacts with the forum, and Lighthouse List's actions in response to those requests cannot serve the basis of personal jurisdiction. *See Walden*, 571 U.S. at 285; *Pinninti*, 2010 WL 2483992, at *8; *Newman*, 2020 WL 6689756, at *7; *Booker*, 2012 WL 4791126, at *2. In addition, as to RFP No. 7, and as with other RFPs, Plaintiffs fail to explain how documents concerning Lighthouse List's *internal* practices for processing Daniel's Law requests or handling information related to New Jersey residents could possibly constitute Lighthouse List's contacts with the New Jersey forum for purposes of Plaintiffs' purposeful availment theory. They cannot, given that Lighthouse List is indisputably a Florida LLC.

These requests are also not relevant to the effects test. For the reasons explained above, the alleged receipt of a takedown request does not establish the requisite knowledge or express aiming required under the effects test. Similarly, the mere availability of information about New Jersey residents in Lighthouse List's database even after Lighthouse List received a corresponding takedown request says nothing about whether Lighthouse List expressly aimed its purportedly tortious conduct at New Jersey.

Plaintiffs' request (Doc. 42 at 25) that Lighthouse List confirm if it received the more than 19,000 emails Plaintiffs and the assignors allegedly sent is also overbroad and disproportionate to the needs of the case. Plaintiffs already alleged that they and approximately 19,104 assignors sent takedown requests to Lighthouse List, and this Court has already held that the Complaint sufficiently alleged receipt. *See* Doc. 40 at 20. Jurisdictional discovery on this point is not necessary at this juncture. This Court can simply assume the truth of Plaintiffs' allegations of receipt and assess if Plaintiffs have articulated a prima facie case of jurisdiction. They have not, for all the reasons explained *supra*.

24

### G.    Plaintiffs' Miscellaneous Additional Requests.

**RFP No. 1(a):  Ownership, registration, licensing, offering, or use of any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law (here and below, including without limitation the home addresses and phone numbers of the Covered Persons and Individual Plaintiffs referenced in the Complaint filed against Defendant).**

Plaintiffs conclusorily assert that RFP 1 relates to whether Lighthouse List committed an "intentional tort" and "profit[ed] from data obtained from New Jersey public records and systematic distribution of forum-specific content."  Doc. 42 at 21.  But Plaintiffs make no attempt to explain *how*.  Even so, as discussed, Daniel's Law is not an intentional tort, and Plaintiffs have not alleged that Lighthouse List obtained data from New Jersey public records.  (As discussed, the evidence also refutes that contention.)   In addition, Plaintiffs do not and cannot explain how Lighthouse List's purported distribution of "forum-specific content" reflects a defendant's contact *with the forum* itself.  Doc. 42 at 21.

**RFP No. 4: Produce all communications with or regarding any governmental entity in the State of New Jersey including the Department of Community Affairs and the Office of Information Privacy.**

RFP No. 4 is overbroad to the point of absurdity.  It calls for communications regarding, for example, a New Jersey tax authority or public safety commission, which are irrelevant to this case and the narrow jurisdictional inquiry here.  Moreover, Lighthouse List responded to this RFP to the extent arguably relevant or proportional, noting that it conducted a reasonable search during the relevant time period and did not identify communications with any governmental entity in New Jersey that are responsive to this Request.  *See* Rao Decl., Ex. C at 9.  Plaintiffs assert that "communications *regarding* entities like OIP are relevant to whether the Defendant knew about but nonetheless intentionally violated Daniel's Law after receiving nondisclosure requests from

covered persons." Doc. 42 at 24. They are not, particularly when the communications Plaintiffs

seek need not even relate to Daniel's Law. As discussed, the effects test inquiry is far narrower.

**RFP No. 6: All documents reflecting or relating to Defendant's involvement with any related entity's communications, correspondence, or interactions with Plaintiffs or any other New Jersey residents who sent Daniel's Law Requests to Defendant or any other related entity.**

**RFP No. 8: All documents reflecting or relating to Defendant's relationship, affiliation, or connection with any related entity, including but not limited to any agreements, contracts, joint ventures, partnerships, or common ownership or control, with operations in New Jersey.**

Plaintiffs speculate that "if a Defendant relies on an affiliate to process Daniel's Law

requests or otherwise communicate with covered persons, documents evidencing the Defendant's

involvement in that related entity's communications with Plaintiffs and other covered persons are

relevant to show knowledge and express targeting under the effects test, for the same reasons as

RFP 5." Doc. 42 at 26. But the Complaint does not plead any factual basis to support that

speculation, or that Lighthouse List is in a relationship of common ownership or control with any

other entity, rendering further discovery on that subject an inappropriate fishing expedition.

In any event, and without waiving its objections, Lighthouse List is willing to supplement

its response to RFP Nos. 6 and 8 in light of Plaintiffs' clarification of the term "related entity."

**RFP No. 12: Any and all documents reflecting or relating to any opt-out, exclusion, or suppression options or mechanisms offered or provided by Defendant or any other related entity to any New Jersey residents or customers through any of Defendant's websites identified in the Complaint, or any other product or service that publishes, provides access to, or otherwise discloses information subject to Daniel's Law.**

RFP No. 12 broadly requests documents relating to *any* opt-out mechanisms made

available to *any* New Jersey resident—for *any* reason. RFP No. 12 is completely untethered from

the allegations in this case. Plaintiffs' purported explanation—that the requested documents go to

knowledge under the effects test—is a non sequitur and incorrect. *See supra*, Argument § I.B

(describing relevant inquiry under effects test).

26

**RFP No. 13:** **Any and all documents reflecting or relating to any internal or external communications, correspondence, or discussions by Defendant or any other related entity regarding the introduction and passage of Daniel's Law in New Jersey, including the applicability, scope, and effect of the law.**

Documents related to Lighthouse List's awareness of Daniel's Law generally, if any, say nothing about whether Lighthouse List failed to implement any alleged covered persons' takedown requests specifically *because* those persons live in New Jersey—particularly to the extent Plaintiffs seek documents that *predate* the sending of the takedown requests. And, as discussed, mere knowledge of or compliance with a forum-specific law does not evidence targeting of that forum.

**RFP No. 17:** **All documents reflecting or relating to the actions taken by Defendant to preserve documents in connection with this litigation, including without limitation records of every time Defendant has published, provided access to, or otherwise made available the home addresses or phone numbers of the Covered Persons and Individual Plaintiffs.**

Plaintiffs' request for preservation-related documents is completely unrelated to personal jurisdiction and calls for documents protected by the attorney-client privilege and work product protection. There is no factual predicate—alleged or otherwise—to justify discovery about discovery, much less as it relates to personal jurisdiction. Plaintiffs' request is improper.

**RFP No. 18:** **All documents reflecting or relating to the number of individuals with New Jersey addresses in any and all databases or on any sites that Defendant utilizes in connection with any product or services.**

Plaintiffs' request for documents reflecting the number of individuals with New Jersey addresses in any Lighthouse List database is untethered to any viable jurisdictional theory and the operative facts underlying Plaintiffs' Daniel's Law claim. Plaintiffs insist that the requested documents go to whether Lighthouse List "traffics in forum-specific content." Doc. 42 at 34. But, as explained, merely collecting or maintaining data about New Jersey residents is not a contact between Lighthouse List and New Jersey, particularly when Lighthouse List has disclaimed acquiring data for its Data Lists product directly from New Jersey entities. And Lighthouse List

has already disclosed that it did not sell Data Lists to anyone with a New Jersey billing address during the relevant time period.

And again, under the effects test, the reach of a defendant's cyber activity "does not establish personal jurisdiction merely because that activity encompasses data belonging to or related to individuals hailing from" New Jersey. *Dalal*, 2025 WL 1726259, at *8. Accordingly, RFP No. 18 is both overbroad and irrelevant to the personal jurisdiction inquiry.

## **CONCLUSION**

This Court should deny Plaintiffs' motion to compel in its entirety.

/s/ Ronald L. Davison
  Ronald L. Davison

Ronald L. Davison
Starr, Gern, Davison & Rubin, P.C.
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640
Tel: 973-403-9200 Ext. 226
Fax: 973-226-0031
Email: rdavison@starrgern.com

Jacob Sommer (*pro hac vice*)
ZwillGen PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Tel: 202-706-5205
Email: Jake@zwillgen.com

Sudhir V. Rao (*pro hac vice*)
ZwillGen PLLC
183 Madison Ave., Suite 1504
New York, NY 10016
Tel: (646) 362-5590
Email: sudhir.rao@zwillgen.com

Dated: July 14, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of July 2025, a true and correct copy of Defendant Lighthouse List Company, LLC's Opposition to Plaintiffs' Motion to Compel was served via ECF on counsel for Plaintiffs.